**Joseph A. IAMARINO, Appellant,**

v.

**Margaret M. HECKLER, Secretary, Health & Human Services, Appellee.**

**No. 85–2406.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1986.

Decided July 9, 1986.

Kenneth F. Dolezal, Cedar Rapids, Iowa, for appellant.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and BATTEY,* District Judge.

HEANEY, Circuit Judge.

Joseph A. Iamarino appeals from a district court decision affirming the determination of the Secretary of Health and Human Services (Secretary) that Iamarino was not disabled until October 29, 1982.

## I. BACKGROUND

Iamarino was born on June 27, 1946. He has a long history of psychiatric problems requiring frequent hospitalization. He was unemployed from July, 1980, through August, 1981, when he entered the Goodwill Industries Work Adjustment Program, a program designed to help individuals acquire the work habits, attitudes, and behaviors needed to obtain and maintain a job in the community. He stayed in this program until April, 1982, when he transferred into the Goodwill Industries Client Employment Program. In October, 1982, he was placed in a competitive job. A week after his placement, he was terminated from the job and arrested for sexual assault.

---

* The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

Iamarino filed for disability benefits on November 23, 1982, alleging an onset date of October 29, 1982. His application was denied initially and on reconsideration. Subsequent to his hearing before the administrative law judge (ALJ), but before a decision was rendered, Iamarino notified the ALJ that the onset date of his disability was actually prior to June 23, 1981. In his decision, the ALJ agreed that Iamarino was entitled to social security benefits, but determined that October 29, 1982, was the onset date, reasoning that Iamarino had been engaged in substantial gainful activity (SGA) through that date. On July 27, 1984, the Appeals Council denied Iamarino's request for review, establishing the decision of the ALJ as the Secretary's final decision. The district court affirmed. Iamarino appeals arguing that the Secretary's determination that Iamarino was capable of performing SGA between June 23, 1981, and October 29, 1982, is not supported by substantial evidence.

## II. DISCUSSION

The Secretary's finding that Iamarino's activities in the Goodwill programs constituted SGA conflicts with this Court's decision in *Van Horn v. Heckler,* 717 F.2d 1196 (8th Cir.1983), in which we stated that "work in a sheltered workshop is not substantial evidence supporting a denial of disability benefits." *Id.* at 1199. This rule is supported by the social security regulations, which do not allow positive presumptions of SGA to be based on sheltered workshop earnings.

Although the Secretary argues that the regulations provide a positive presumption of SGA from certain sheltered workshop earnings, and an agency's interpretation of its own regulations is entitled to great deference, such interpretation is not conclusive, particularly where, as here, it is inconsistent with the wording of the regulation.

*See Munsinger v. Schweiker,* 709 F.2d 1212, 1214–15 (8th Cir.1983). The regulations deal separately with competitive and sheltered employment. 20 C.F.R. § 404.-1574(b)(4) provides a negative presumption for sheltered employment. It states that:

> If you work in a *sheltered workshop.* If you are working in a sheltered workshop or a comparable facility especially set up for severely impaired persons, your earnings and activities will ordinarily establish that you have not done substantial gainful activity if * * * (vi) [y]our average earnings are not greater than $300 a month in calendar years after 1979. [Emphasis added.]

This is a more liberal threshold than the one established for competitive employment. Subsection (b)(3) provides:

> Earnings that will *ordinarily* show that you have not engaged in substantial gainful activity. We will generally consider that the earnings from your work as an employee will show that you have not engaged in substantial gainful activity if * * * (vi) [y]our earnings averaged less than $190 a month in calendar years after 1979. [Emphasis added.]

Subsection (b)(2) establishes a positive presumption for competitive employment:

> Earnings that will *ordinarily* show that you have engaged in substantial gainful activity. We will consider that your earnings from your work activities as an employee show that you have engaged in substantial gainful activity if * * * (vi) [y]our earnings averaged more than $300 a month in calendar years after 1979. [Emphasis added.]

There is, however, no regulation establishing a positive presumption of SGA for sheltered employment.[1]

Logic, as well as the language of the regulation, dictates this interpretation. If the positive presumption of subsection (b)(2) applied to sheltered employment, a

---

1. The language of subsection (b)(6) also supports this interpretation. It provides that where the claimant's earnings fall between the amounts shown in subsections (b)(2) and (3), that is, in competitive employment situations where there is neither a positive nor a negative presumption, the Secretary will generally compare the time, energy, skill, responsibility, and pay of the sheltered work and work in the community. Subsection (5), dealing with sheltered employment, is not discussed.

claimant being paid $300 a month would presumptively not be capable of SGA, while a claimant being paid $300.01 would presumptively be capable of SGA. Subsection (b)(6) recognizes the necessity of establishing a middle ground where any presumption would be inappropriate.

Although work in a sheltered workshop is not by itself substantial evidence, "such work may provide some evidence of an ability to engage in substantial gainful activity." *Van Horn,* 717 F.2d at 1199. The monthly reports made of Iamarino's progress in the Goodwill programs do support the Secretary's determination that Iamarino was capable of performing SGA, but only as of April 14, 1982. On that date, Pat Steele, the program coordinator, reported: "I feel he's ready but the economy makes it difficult to find placements." Administrative Record at 158. This was the first clear indication that Steele thought Iamarino was capable of competitive work.[2]

Accordingly, Iamarino is entitled to additional disability insurance benefits and supplemental security income for the period between June 23, 1981, and April 14, 1982.[3]

2. Iamarino's subsequent inability to actually perform SGA throws into question Steele's opinion that Iamarino was capable of competitive work between April 14, 1981, and October, 1981, despite the fact that Steele's opinion was reasonably based on Iamarino's performance in the sheltered environment. Nevertheless, we are unable to find that Steele's reports did not constitute substantial evidence supporting the Secretary's determination.

3. We note that, "for purposes of review, we may divide the benefit claim period considered by the ALJ." *Van Horn,* 717 F.2d at 1200.